```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA
```

**MACK FINANCIAL SERVICES ET AL**                    **CIVIL ACTION**

**VERSUS**                                           **NO. 20-2814**

**GEORGE L. ACKEL III ET AL**                        **SECTION "B"(5)**

## ORDER AND REASONS

Before the Court is Plaintiffs' "Ex Parte Motion for Issuance of Writ of Sequestration" (Rec. Doc. 3).

For the reasons discussed below,

**IT IS ORDERED** that the ex parte motion (Rec. Doc. 3) is **DISMISSED WITHOUT PREJUDICE.**

### I.     PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs Mack Financial Services, a division of VFS US LLC ("Mack Financial") and Volvo Financial Services, a division of VFS US LLC ("Volvo Financial") filed a verified complaint against Defendants George J. Ackel III and Ackel Construction Company, LLC f/k/a Ackel Construction Corporation ("Ackel") for default damages and a writ of sequestration. Rec. Doc. 1. The plaintiffs' verified complaint pertains to five contracts executed between the parties to be individually discussed below. *Id.*

On or about August 17, 2018, Fleestar, LLC ("Fleestar") executed the Master Loan and Security Agreement ("Master Agreement") in favor of Mack Financial. *Id.* at 2. On or about the same date, Fleestar executed a promissory note (Secured) and

1

Schedule ("Schedule 001 Contract") through which Fleetstar borrowed the principal amount of $547,708 from Mack Financial to finance its purchase of four 2019 Mack Pinnacle 64T Daycab vehicles ("Schedule 001 Equipment"). Accordingly, Fleetstar agreed to repay the amount borrowed, plus interest, in sixty (60) monthly payments of $10,713.97. *Id.* at 3.

To secure the payment of the sums due under the Schedule 001 Contract, in addition to all other debts and obligations at any time owed by Fleetstar to Mack Financial, Fleetstar granted Mack Financial a security interest in the Schedule 001 Equipment and "all attachments, accessions, replacements, parts, proceeds (including insurance proceeds), accounts, rights to payment (including monetary obligations, whether or not earned by performance), secondary obligations incurred or to be incurred, chattel paper, electronic chattel paper, general intangibles, payment intangibles, instruments, warranties, service contracts, documents and records now or hereafter arising from the Equipment" ("Schedule 001 Collateral"). *Id.*

On August 21, 2018, Mack Financial properly perfected its interest in the Schedule 001 Collateral as evidenced by the Certificates of Title issued by the State of Louisiana. *Id.*

On or about February 28, 2018, A & Brothers executed a Credit Sales Contract ("Schedule 003 Contract") through which A & Brothers borrowed the principal amount of $127,436.77 from Mack Financial

2

to finance its purchase of a 2018 Mack GU713 vehicle with a 2018 OX Body ("Schedule 003 Equipment"). *Id.* at 4. A & Brothers agreed to repay the amount borrowed, plus interest, in seventy-two (72) monthly payments of $2,524.01. *Id.*

To secure the payment of all sums due under the Schedule 003 Contract, in addition to all other debts and obligations at any time owed by A & Brothers to Mack Financial, A & Brothers granted Mack Financial a security interest in the Schedule 003 Equipment and "all present and future attachments, accessions, replacements, parts, repairs, additions, substitutions, chattel paper, and proceeds, including amounts payable under any insurance policies" ("Schedule 003 Collateral"). *Id.*

On July 10, 2018, Mack Financial properly perfected its interest in the Schedule 003 Collateral as evidenced by the Certificate issued by the State of Louisiana. *Id.* Accordingly, on September 18, 2018, Mack Financial further properly perfected its interest in the Schedule 003 Collateral by filing a UCC-1 Financing Statement with the Secretary of State of the State of Louisiana. *Id.*

On or about April 10, 2018, A & Brothers executed a Credit Sales Contract ("Schedule 004 Contract") through which A & Brothers borrowed the principal amount of $117,369.45 from Mack Financial to finance its purchase of a 2018 Mack GU 713 vehicle ("Schedule 004 Equipment"). *Id.* at 5. A & Brothers agreed to repay the amount

3

borrowed plus interest in seventy-two (72) monthly payments of $2,318.47. *Id.*

To secure the payments of all sums due under the Schedule 004 Contract, as well as all other debts and obligations at any time owed by A & Brothers to Mack Financial, A & Brothers granted Mack Financial a security interest in the Schedule 004 Equipment and "all present and future attachments, accessions, replacements, parts, repairs, additions, substitutions, chattel paper, and proceeds, including amounts payable under any insurance policies" ("Schedule 004 Collateral"). *Id.*

On April 19, 2018, Mack Financial properly perfected its interest in the Schedule 004 Collateral as evidenced by the Certificate of Title issued by the State of Louisiana. *Id.*

On or about June 29, 2018, as set forth in Articles of Merger, A & Brothers merged with Fleetstar, with Fleetstar being the surviving entity. *Id.*

On or about September 5, 2018, Fleetstar executed a Secured Promissory note ("Schedule 005 Contract") through which Fleetstar borrowed the principal amount of $355,042.94 from Volvo Financial to finance its purchase of two 2019 Volvo VHD84F vehicles. *Id.* at 6. To secure the payment of all sums due under the Schedule 005 Contract, in addition to all other debts and obligations at any time owed by Fleetstar to Volvo Financial, Fleetstar granted Volvo Financial a security interest in the Schedule 005 Equipment "all

4

present and future attachments, accessions, replacements, parts, proceeds (including insurance proceeds), income earnings, accounts rights to payment (including monetary obligations, whether or not earned by performance), secondary obligations incurred or to be incurred, chattel paper, electronic chattel paper, general intangibles, payment intangibles, warranties, service contracts, documents, and records now or hereafter arising from the Equipment" ("Schedule 005 Collateral"). *Id.*

On September 21, 2018 and September 24, 2018, Volvo Financial properly perfected its interest in the Schedule 005 Collateral asset forth in the Certificates of Title issued by the State of Louisiana. *Id.* at 6-7.

In September 2018, Volvo Financial further properly perfected its interest in the Schedule 005 Collateral by filing a UCC-1 Financing Statement with the Secretary of State of the State of Louisiana. *Id.* at 7.

On or about August 17, 2018, Defendants Ackel and Ackel Construction as guarantors executed a Continuing Guaranty pursuant to which, for acknowledged consideration, each of the Guarantors, among other things, guaranteed the full prompt and complete payment and performance of all sums, moneys, notes, loans, and indebtedness of Fleetstar to Mack Financial and its subsidiaries and affiliates ("Continuing Guaranty 001"). The Schedule 001, Schedule 003, and

Schedule 004 Contracts were entered into by Mack Financial in reliance on and conditioned upon Continuing Guaranty 001. *Id.*

On or about September 5, 2018, the Guarantors executed a Continuing Guaranty in which each of the Guarantors guaranteed the full, prompt and complete payment and performance of all sums, moneys, notes, loans, and indebtedness of Fleetstar to Volvo Financial and its subsidiaries and affiliates ("Continuing Guaranty 002"). *Id.* Accordingly, the Schedule 005 Contract was entered into by Volvo Financial in reliance on and conditioned upon Continuing Guaranty 002. *Id.*

On April 2, 2019, Fleetstar filed a voluntary petition for bankruptcy under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Louisiana. *Id.* at 8.[1] On February 5, 2020, the bankruptcy court ordered that the stay be lifted as to the Schedule 001 Collateral, Schedule 003 Collateral, Schedule 004 Collateral, and Schedule 005 Collateral ("Collateral"), allowing Plaintiffs to exercise all contractual and state law remedies in and to the Collateral. *Id.*

The Schedule 001 Contract, Schedule 003 Contract, and Schedule 004 Contract ("Mack Financial Contracts") provides that Fleetstar is in default if it, among other things, fails to pay any amount due under its obligations to Mack Financial under any

---

[1] Case No. 18-10873.

agreement, contract or indebtedness of any kind. *Id.* The Mack Financial Contracts follow that upon default, Mack Financial may, at its option, declare all indebtedness due to it immediately due and, without notice, demand or legal process, take possession of the Schedule 001 Collateral, Schedule 003 Collateral, and Schedule 004 Collateral ("Mack Collateral"). *Id.*

Plaintiffs indicate that Fleetstar defaulted under the terms of the Mack Financial Contracts by, *inter alia*, failing to remit payments due to Mack Financial. *Id.* As such, Plaintiff Mack Financial alleges to have not received any payments due under the Mack Financial Contracts from the Guarantors as required by Continuing Guaranty 001. *Id.*

As of September 17, 2020, the balance due on the Schedule 001 Contract was $557,652.65 plus interest accruing at a rate of 6.49% per annum, reasonable attorneys' fees, and all costs of these proceedings. *Id.*

As of that same date, the balance due on the Schedule 003 Contract was $149,040.56 plus interest accruing at a rate of 12.49% per annum, reasonable attorneys' fees, and all costs of these proceedings. *Id.* at 9.

As of that same date, the balance due on the Schedule 004 Contract was $139,222.07 plus interest accruing at a rate of 12.39% per annum, reasonable attorneys' fees, and all costs of these proceedings. *Id.*

As of that same date, the total amount due to Mack Financial under the Mack Financial Contracts was $845,915.28 plus applicable interest, reasonable attorneys' fees, and all costs of these proceedings. *Id.*

Under the terms of the Schedule 005 Contract ("Volvo Financial Contract"), Fleetstar is in default if it, among other things, fails to pay any amount due under its obligations to Volvo Financial under any agreement, contract, or indebtedness of any kind. *Id.* As such, upon default, Volvo Financial may, at its option, declare all indebtedness due to it immediately due and, without notice, demand or legal process, take possession of the Schedule 005 Collateral ("Volvo Collateral"). *Id.*

According to Plaintiffs, Fleetstar defaulted under the terms of the Volvo Financial Contract by, *inter alia*, failing to remit payments due to Volvo Financial. *Id.* Moreover, Plaintiffs allege that Volvo Financial has not received any payments from the Guarantors pursuant to Continuing Guaranty 002. *Id.*

As of September 17, 2020, the balance due on the Volvo Financial Contract was $349,013.84 plus interest accruing at a rate of 6.65% per annum, reasonable attorney's fees, and all costs of these proceedings. *Id.*

## II. LAW AND ANALYSIS

### a. Jurisdiction

Before this Court addresses whether the plaintiffs have properly sought a writ of sequestration, it must determine, as a preliminary matter, whether jurisdiction is proper in this case. The plaintiffs attribute jurisdiction to complete diversity of citizenship between the parties and an amount in controversy in excess of $75,000 pursuant to 28 U.S.C. § 1332(a)(1). Rec. Doc. 1 at 1.

28 U.S.C. § 1332(a)(1) empowers district courts to "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and where the parties are citizens of different states. 28 U.S.C. § 1332(a)(1). The citizenship of a corporation is determined by the state where it has been incorporated and where it has its principal place of business. 28 U.S.C. § 1332(c)(1). Where a party is a non-corporate entity, the citizenship of each of its members shall be adopted by that party. *Chapman v. Barney*, 129 U.S. 677 (1889).

In this case, Plaintiff Mack Financial is a limited liability company formed under the laws of the state of Delaware with its principal place of business located in Greensboro, North Carolina whose sole member, VNA Holdings, Inc., is a Delaware Corporation with its principal place of business located in Greensboro, North

Carolina. Rec. Doc. 1 at 2. Plaintiff Volvo Financial is also a limited liability company formed under the laws of the state of Delaware with its principal place of business located in Greensboro, North Carolina, whose sole member, VNA Holdings, Inc., is a Delaware Corporation with its principal place of business located in Greensboro, North Carolina. *Id.*

Based on the plaintiffs' information and belief, Defendant George J. Ackel III is a citizen of the state of Louisiana and resides in New Orleans, Louisiana. *Id.* Moreover, based on information and belief, Defendant Ackel Construction Company, LLC, is a limited liability company formed under the laws of the State of Louisiana with its principal place of business located in Jefferson Parish, Louisiana. *Id.* Likewise, based on information and belief, all members of Ackel Construction are citizens of or entities formed in the state of Louisiana. *Id.*

For purposes of determining diversity jurisdiction, both plaintiffs, as non-corporate entities, are citizens of Delaware and North Carolina through sole member VNA Holdings. Accordingly, Defendant George Ackel is a citizen of Louisiana, and Defendant Ackel Construction is a citizen of Louisiana. Because the parties are not citizens of the same state, complete diversity between the parties exist.

In addition to complete diversity, the amount of controversy must be in excess of $75,000. 28 U.S.C. § 1332(a)(1). Based off

the allegations set forth in the complaint, Guarantors currently owe the sum of $845,915.28 to Mack Financial pursuant to Continuing Guaranty 001 and the sum of $349,013.84 to Volvo Financial pursuant to the Continuing Guaranty 002. Because the plaintiffs allege that the amount owed to them exceeds $75,000, the amount in controversy in the instant case exceeds well over the statutory threshold. Therefore, this Court should find that diversity jurisdiction exists in the instant case.

Furthermore, personal jurisdiction over an in-state defendant may be proper if the defendant received service of process while physically within the state's borders. *Pennoyer v. Neff*, 95 U.S. 714 (1877). Here, on October 21, 2020, Defendant Ackel Construction, through its registered agent George Ackel, was served with summons of the instant action. Rec. Doc. 6 at 2. Additionally, on that same date, Defendant George Ackel was personally served with summons in New Orleans Louisiana. *Id.* Therefore, because the defendants were personally served with process within the forum state, this Court may exercise personal jurisdiction over George Ackel and Ackel Construction.

b. **Pleading Standard in Seeking a Writ of Sequestration**

Because it has been established that this matter was brought into federal court based on complete diversity, the forum state's substantive law shall apply. *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010)(citing *Erie R.R. v. Thompkins*, 304 U.S.

64 (1938)). As it specifically pertains to sequestration and seizure, Federal Rule of Civil Procedure 64, in part, states:

> (a) REMEDIES UNDER STATE LAW – IN GENERAL. At the commencement of and throughout the action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies.

Fed. R. Civ. Proc. 64(a). The rule follows thereafter that available remedies under the instant rule include, among others, sequestration. Fed. R. Civ. Proc. 64(b).

Moreover, Federal Rule of Civil Procedure 69 states, in part, "The procedure on execution – in proceedings supplementary to and in aid of a judgment or execution – must accord with the procedure of the state where the court is located. . ." Fed. R. Civ. Proc. 69. As such, in *Mitchell v. W.T. Grant Co.*, the United States Supreme Court affirmed the constitutionality of Louisiana's procedure for issuing writs of sequestration, which may be granted without a hearing or notice to the defendants. 416 U.S. 600, 605-06 (1974). Accordingly, Louisiana Civil Code Article 3571 establishes the standard for issuance of a writ of sequestration:

> When one claims the ownership or right to possession of property, or a mortgage, security interest, lien or privilege thereon, he may have the property seized under a writ of sequestration, if it is *within the power of the defendant to conceal, dispose of, or waste the property or the revenues therefrom, or remove the property from the parish*, during the pendency of the action.

La. Civ. Code Art. 3571 (emphasis added). Additionally, the Court may only issue a writ of sequestration "when the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts shown by the petition verified by, or by the separate affidavit of, the petitioner, his counsel or agent." La. Civ. Code Art. 3501.

Thus, the Civil Code sets forth the requirements by which the party seeking sequestration must abide. First, the plaintiff must claim an ownership or lien interest in the sequestered property. *Rocket Industries, Inc. v. Southern Tire & Supply, Inc.*, 706 F.2d 561, 563 (5th Cir. 1983); *see* e.g., *Hancock Bank v. Alexander*, 256 La. 643, 237 So.2d 669 (La. 1970).

Second, the plaintiff need not show that the defendants will dispose or conceal of the property – just that it is within their power to do so. *Transamerica Rental Finance Corp. v. Kelroy, Inc.*, CIV. A. No. 90-3110, 1990 WL 150121 at *1 (E.D.La. 10/3/90) (Collins, J.) (finding that "the properties in question are in the defendants' possession, and thus the defendants have the power to conceal, dispose or waste the same")(citing *Credit Alliance Corp. v. Rabb*, 419 So.2d 123 (La.Ct.App. 2d Cir. 1982)). In *Rabb*, the Louisiana Second Circuit Court of Appeal reversed the lower court's dissolution of a writ of sequestration, in part, because "the very nature of movable property [subject to the mortgage and privilege] would afford a defendant an opportunity to conceal, dispose, or

waste the property, or the revenues therefrom, or remove the property from the parish during the pendency of the suit." *Rabb*, 419 So.2d at 125.

Lastly, the party seeking sequestration must allege and swear to facts in its verified complaint warranting the issuance of such a writ. *CEF Funding, L.L.C. v. Huey*, No. 09-2978, 2009 WL 10681986 at *2 (E.D.La. 7/2/09) (Africk, J.) (citing *Yorktown Sav. & Loan Ass'n v. Thomas*, 379 So.2d 798, 799 (La. Ct. App. 4th Cir. 1980) ("Art. 3501 must be strictly and literally complied with because it deals with the extremely harsh remedy of a conservatory writ.")).

In the instant case, there are two plaintiffs who claim security interests in the property to be sequestered. In order to secure the payments due under the Contracts[2], both Fleetstar and A & Brothers allegedly granted the plaintiffs security interests in the Collateral.[3] Specifically, Mack Financial claims to have properly perfected its interest in the Mack Collateral when the State of Louisiana issued the respective Certificates of Title evidencing as such. Rec. Doc. 1 at 3-5.[4] Volvo Financial claims to

---

[2] Collectively the Schedule 001 Contract, the Schedule 002 Contract, the Schedule 003 Contract, the Schedule 004 Contract, and the Schedule 005 Contract.
[3] Collectively Schedule 001 Collateral, the Schedule 002 Collateral, the Schedule 003 Collateral, the Schedule 004 Collateral, and the Schedule 005 Collateral.
[4] As it relates to the Schedule 001 Collateral, the State of Louisiana issued the Certificates of Title on August 21, 2018. As it relates to the Schedule 002 Collateral, the Certificates of Title was issued by the same on July 10, 2018. Lastly, as it relates to the Schedule 003 Collateral, the Certificates of Title was issued by the same on April 19, 2018.

have properly perfected its interest in the Schedule 005/Volvo Collateral on September 21, 2018 as evidenced by the Certificates of Title issued by the state. *Id.* at 6. Thus, this Court should find that the plaintiffs have sufficiently claimed a security interest in the equipment.

Moreover, the plaintiffs allege that it is within the defendant's power to potentially dispose, conceal or waste the equipment. Rec. Doc. 3 at 2. As indicated by the *Rabb* court, the movable nature of property to be sequestered would afford the defendant an opportunity to conceal, dispose of, or waste the property. *Rabb*, 419 So.2d at 125. In so finding, the court relied on the Louisiana Third Circuit's decision in *Montagne*, which found that "the facts that the items were movable, belonged to the lessee, and were located on [the defendant's] leased premises gave rise to the conclusion that it was within the power of the lessee to conceal, dispose or, or remove the property." *Id.* (citing *Montagne v. Tinker*, 197 So.2d 154 (La.App. 3d Cir. 1967), *writ denied*, 250 La. 916, 199 So.2d 921).

Here, the equipment that the plaintiffs request to be seized are the purchased vehicles under the Contracts through which the plaintiffs agreed to finance the payments. Rec. Doc. 3 at 1-2. The plaintiffs indicate in their motion that the equipment is presently located at 600 Edwards Avenue in New Orleans, Louisiana, but it is unclear whether this site is under possession of, or even

accessible by, the defendants. Rec. Doc. 3 at 2. Notably, nothing in the exhibits attached to the plaintiffs' complaint and motion indicate that the Edwards Avenue location is leased, possessed or owned by the defendants. Thus, the general allegation that the equipment "is at risk of waste, disposition or removal" without further indication the property is located on the defendants' premises is insufficient to satisfy the rationale of *Rabb*. Therefore, the plaintiffs fail to allege whether it is within the defendants' power to conceal, dispose of, or waste the property as required by Art. 3571. Likewise, in view of this pleading discrepancy, the plaintiffs have likewise failed to allege sufficient facts in either the complaint or motion that would warrant issuance of a writ of sequestration in violation of Art. 3501. Therefore, the plaintiffs' motion seeking a writ of sequestration fails, but subject to later correction.

New Orleans, Louisiana this 10th day of November, 2020

_____
SENIOR UNITED STATES DISTRICT JUDGE