**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

MACK FINANCIAL SERVICES, ET AL        CIVIL ACTION

VERSUS        NO. 20-2814
       c/w 21-669

GEORGE L. ACKEL III, ET AL        SECTION "B"(5)

<u>ORDER AND REASONS</u>

Before the Court is plaintiffs' Motion for Summary Judgment (Rec. Doc. 17). No opposition or response was filed by defendants. For the following reasons,

**IT IS ORDERED** that the motion (Rec. Doc. 17) is **GRANTED;**

**IT IS FURTHER ORDERED** that the Court shall retain jurisdiction to decide plaintiffs' motion for attorney's fees, provided that the motion and supporting materials are filed within **<u>fourteen (14) days of this order and in accordance with local rules</u>**.

<u>FACTS OF THE CASE AND PROCEDURAL HISTORY</u>

This suit arises from a breach of guaranty claim wherein the defendants Fleetstar, LLC ("Fleetstar"), George J. Ackel III ("Ackel"), and Ackel Construction Company ("Ackel Construction")(collectively "defendants") allegedly failed to make payments owed to plaintiffs Mack Financial Services, a division of VFS US LLC ("Mack Financial") and Volvo Financial Services, a division of VFS US LLC ("Volvo Financial")(collectively "plaintiffs"). Rec. Doc. 1.

1

On or about August 17, 2018, Fleetstar allegedly executed a Master Loan and Security Agreement ("Master Agreement") in favor of Mack Financial. Rec. Doc. 17-3 at 1. Fleetstar executed a secured promissory note and schedule ("Schedule 001 Contract") through which Fleetstar borrowed the principal amount of $547,708 from Mack Financial to finance its purchase of four 2019 Mack Pinnacle 64T Daycabs ("Schedule 001 Equipment"). *Id.* at 1-2. Fleetstar allegedly agreed to repay the amount borrowed plus interest in 60 monthly payments of $10,713.97. *Id.* at 2. Accordingly, to secure the payment due under the Schedule 001 Contract, Fleetstar allegedly granted Mack Financial a security interest in the Schedule 001 Equipment ("Schedule 001 Collateral"), which Mack Financial perfected on August 21, 2018. *Id.*

On or about February 28, 2018, A & Brothers Construction Company of Louisiana, LLC ("A & Brothers") executed a credit sales contract ("Schedule 003 Contract") through which A & Brothers borrowed the principal amount of $127,436.77 from Old River of New Orleans, LLC ("Old River") to finance its purchase of a 2018 Mack GU13 truck with 2018 OX Body ("Schedule 003 Equipment"). *Id.* at 3. A & Brothers allegedly agreed to repay the amount borrowed plus interest in 72 monthly installments of $2,524.01. *Id.* To secure payments due under the Schedule 003 Contract, A & Brothers

2

allegedly granted Old River a security interest in the Schedule 003 Equipment ("Schedule 003 Collateral"). *Id.*

On or about February 28, 2018, A & Brothers assigned its rights and interests in Schedule 003 Contract and Collateral to Mack Financial. *Id.* On July 10, 2018, Mack Financial perfected its interest in the Schedule 003 Collateral. *Id.* On September 18, 2018, Mack Financial further perfected its interest in the Schedule 003 Collateral by filing a UCC-1 Financing Statement with the Louisiana Secretary of State. *Id.* at 3-4.

On or about April 10, 2018, A & Brothers executed a credit sales contract ("Schedule 004 Contract") through which A & Brothers borrowed the principal amount of $117,369.45 from Old River to finance its purchase of a 2018 Mack GU713 truck ("Schedule 004 Equipment"). *Id.* at 4. A & Brothers allegedly agreed to repay the amount borrowed plus interest in 72 monthly payments of $2,318.47. *Id.* Accordingly, to secure payments due under the Schedule 004 Contract, A & Brothers allegedly granted Old River a security interest in the Schedule 004 Equipment ("Schedule 004 Collateral"). *Id.*

On that same date, Old River assigned its rights and interests in the Schedule 004 Contract and Collateral to Mack Financial. *Id.* On April 19, 2018, Mack Financial perfected its interest in the Schedule 004 Collateral. Meanwhile, on or about June 29, 2018, A

3

& Brothers merged with Fleetstar, with Fleetstar being the surviving entity. *Id.* at 4-5.

On or about September 5, 2018, Fleetstar executed a secured promissory note ("Schedule 005 Contract") through which Fleetstar borrowed the principal amount of $335,042.94 from Volvo Financial to finance its purchase of two 2019 Volvo VHD84F trucks with an attached 16 ft. steep dump bed ("Schedule 005 Equipment"). *Id.* at 5. Fleetstar allegedly agreed to repay the amount borrowed plus interest in 60 monthly payments of $6,579.07. *Id.* Accordingly, Fleetstar allegedly granted Volvo Financial a security interest in the Schedule 005 Equipment ("Schedule 005 Collateral"), which was properly perfected on September 21, 2018 and September 24, 2018. *Id.* at 5-6. Volvo Financial further perfected its interest in the Schedule 005 Collateral by filing a UCC-1 Financing Statement with the Louisiana Secretary of State on September 11, 2018. *Id.*

On or about August 17, 2018, defendants Ackel and Ackel Construction executed a continuing guaranty, pursuant to which, for acknowledged consideration, guaranteed the full, prompt and complete payment and performance of all sums owed by Fleetstar to Mack Financial under Schedule 001, Schedule 003, and Schedule 004 Contracts ("Continuing Guaranty 001"). *Id.* at 6.

On or about September 5, 2018, Ackel and Ackel Construction likewise executed a continuing guaranty, pursuant to which, for acknowledged consideration, guaranteed the full, prompt, and

complete payment and performance of all sums owed by Fleetstar to Volvo Financial under Schedule 005 Contract ("Continuing Guaranty 002"). *Id.*

All contracts provided that Fleetstar would be in default if it failed to pay any amount due to Mack Financial or Volvo Financial, and upon default, the latter may, at its option, declare all indebtedness due to it immediately due and, without notice, demand, or legal process, take possession of the collateral. Rec. Doc. 1 at 9.

On April 2, 2019, Fleetstar filed a voluntary petition under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Louisiana. *Id.* at 8. Subsequently, on February 5, 2020, the bankruptcy court granted plaintiffs' motion to lift the stay, specifically as to the Schedule 001, Schedule 003, Schedule 004 and Schedule 005 Collateral. *Id.* The court's decision to grant the motion allowed plaintiffs to pursue the underlying collateral. *Id.*

In an effort to avoid judicial intervention, plaintiffs allegedly contacted Fleetstar to see if it would voluntarily surrender the collateral. Rec. Doc. 17-3 at 7. In response, Ackel Construction sent plaintiffs an invoice for storage of the collateral and informed plaintiffs that they would not turn over the collateral until the invoice was paid. *Id.* Although plaintiffs disputed liability on the invoice, they agreed to pay the purported

5

"storage costs" to attempt to effectuate immediate return of the collateral. *Id.* at 8. Despite this agreement, plaintiffs allege that Ackel Construction and Fleetstar did not return the collateral and ceased further communication. *Id.*

On October 15, 2020, plaintiffs filed a complaint against Ackel and Ackel Construction. Rec. Doc. 1. Plaintiffs alleged that Fleetstar defaulted under the terms of the Schedule 001, Schedule 003, and Schedule 004 Contracts ("Mack Financial Contracts") for failure to pay any amount due thereunder. *Id.* According to plaintiffs, as of March 30, 2021, the total balance due under the Mack Financial Contracts was $845,915.28 plus interest and late fees, reasonable attorney's fees, and all costs of the proceedings. Rec. Doc. 17-3 at 12-13.

Plaintiffs also alleged that Fleetstar defaulted under the terms of the Schedule 005 Contract ("Volvo Financial Contract") for failure to remit payments due thereunder. Rec. Doc. 1 at 9. According to plaintiffs, as of March 30, 2021, the balance due on the Volvo Financial Contract was $349,013.84, plus interest and late fees, reasonable attorney's fees, and all costs of the proceedings. Rec. Doc. 17-3 at 13.

On October 16, 2020, plaintiffs filed a motion for writ of sequestration against Ackel and Ackel Construction, requesting that the collateral be sequestered. Rec. Doc. 3. On November 12, 2020, this Court dismissed the motion without prejudice because

the plaintiffs failed to indicate whether the property was within the defendants' possession. *See* Rec. Doc. 8.

On April 1, 2021, plaintiffs filed a separate lawsuit against Fleetstar based on the same contracts and collateral, seeking recognition and enforcement of their purported security rights. *Mack Financial Services, et al v. Fleetstar, LLC*, (CA 21-669), ECF No. 1. Plaintiffs prayed that the Court's recognition and enforcement of their security interests would permit them to seize the collateral which would be sold at private sale in satisfaction of the amounts owed by leetstar. *Id.* at 11. On May 7, 2021, this Court consolidated the two related actions. Rec. Doc. 18.

On April 4, 2021, plaintiffs filed the instant motion for summary judgment against Ackel and Ackel Construction (Rec. Doc. 20), alleging that there is no genuine issue of material fact that Fleetstar, Ackel, and Ackel Construction defaulted on the underlying contracts and thus plaintiffs are entitled to recognition and enforcement of their security interests in and to the relevant collateral. Rec. Doc. 20 at 1. Defendants failed to file any response to the motion for summary judgment.[1]

## LAW AND ANALYSIS

### A. Summary Judgment Standard

---

[1] It appears that Fleetstar never retained counsel to represent its corporate interests in this matter, which is strictly prohibited by the Fifth Circuit. *See Southwest Express Co. v. Interstate Commerce Comm'n*, 670 F.2d 53, 55 (5th Cir. 1982)("A corporation can appear in a court of record only by an attorney at law.").

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As such, the court should view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixon Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

Courts are discouraged from automatically granting a motion for summary judgment simply because it is unopposed. *Skinner v. Schlumberger Technology Corp.*, No. 13-03146, 2014 WL 12543925, at *1 (W.D.La. Nov. 21, 2014). Thus, the movant is still required to establish the absence of a genuine issue of material fact, and if he fails to do so, the court must deny the motion, even if there was no response. *Id.* (citing *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n. 3(5th Cir. 1995)). Nevertheless, in the absence of an opposition to summary judgment, the court may deem the movant's statement of facts as undisputed. *Loeber v. Bay Tankers, Inc.*, 924 F.2d 1340, 1345 (5th Cir. 1991)(per curiam), *cert.*

*denied*, 502 U.S. 819 (1991); *see also* Fed. R. Civ. P. 56(e). Furthermore, "the court has no obligation to sift through the record in search of evidence to support the nonmovant's opposition to the motion for summary judgment." *Morgan v. Federal Exp. Corp.*, 114 F.Supp.3d 434, 437 (5th Cir. 2015)(internal quotes omitted).

### B. Breach of Guaranty Claim

As provided in the underlying contracts and continuing guaranties, the law of the state of North Carolina shall govern. Rec. Doc. 17-5 at 4; Rec. Doc. 17-13 at 3. Under North Carolina law, a continuing guaranty is defined as "a guaranty the object of which is to enable the principal debtor to have credit over an extended time and to cover successive transactions." *Amoco Oil Co. v. Griffin*, 78 N.C.App. 716, 718, 338 S.E.2d 601, 602 (1986)(citing *Hickory Novelty Co. v. Andrews*, 188 N.C. 59, 123 S.E. 314 (1924)). "A guaranty of payment is an absolute promise to pay the debt of another if the debt is not paid by the principal debtor." *Amoco Oil*, 78 N.C.App. at 718, 338 S.E.2d at 602. In the event of a breach of guaranty, "the creditor's cause of action against the guarantors is separate and independent of the obligation of the principal debtor, and it ripens immediately upon the failure of the principal debtor to pay the debt at maturity." *Cameron-Brown Capital Corp. v. Spencer*, 31 N.C.App. 499, 502, 229 S.E.2d 711, 712 (1976). "The creditor need not have diligently prosecuted the

principal debtor without success before seeking payment from the guarantor of payment." *Id.*

To prevail in a claim for breach of guaranty, the plaintiff must show (1) the existence of a valid contract and (2) breach of the terms of the contract. *Poor v. Hill*, 138 N.C.App. 19, 26, 530 S.E.2d 838, 843 (2000). In North Carolina, a valid contract requires assent, mutuality of obligation, and definite terms. *Charlotte Motor Speedway, LLC v. County of Cabarrus*, 230 N.C.App. 1, 7, 748 S.E.2d 171, 176 (2013).

In similar unopposed motions for summary judgment filed by plaintiffs, courts have generally granted the requested relief upon satisfaction that the evidence establishes the defendant's default and subsequent breach of continuing guaranty. *VFS U.S. LLC v. Abel Property Improvements, LLC*, No. 09-1096, 2010 WL 445936 (W.D.La. Feb. 5, 2010); *VFS US LLC v. Wooten*, No. 3:09-CV-1880-O, 2010 WL 11570202 (N.D.Tex. Dec. 17, 2010); *VFS U.S. LLC v. J & F Excavating, Inc.*, No. 3:10-00810, 2011 WL 703550 (M.D.Tenn. Feb. 17, 2011); *Volvo Financial Services v. Gartner*, No. CIV 08-4196-RAL, 2010 WL 1872920 (D.S.D. May 4, 2010).

Regarding the Mack Financial Contracts, plaintiffs offer Continuing Guaranty 001 and the sworn declaration of their Bankruptcy and Litigation Specialist Ashley Bullins, who is the custodian of records pertaining to the Fleetstar Account. Rec. Docs. 17-16; 17-4. By executing Continuing Guaranty 001, Ackel and

Ackel Construction jointly and severally guaranteed Fleetstar's full and complete performance in repaying its loans and acknowledged plaintiffs' right to proceed against them directly to satisfy any outstanding obligation. *Id.* at 1. The Master Agreement expressly provided that any failure by the borrower or its guarantor to make a payment when due constitutes an "event of default." Rec. Doc. 17-5 at 3. As such, Bullins testifies that Mack Financial never received any payment by Fleetstar, Ackel or Ackel Construction and that Fleetstar defaulted under the terms of the Master Agreement. Rec. Doc. 17-4 at 6.

The undisputed facts clearly establish that the parties executed a valid guaranty agreement. By defaulting on the payments owed to Mack Financial, Fleetstar breached under the terms of the Master Agreement and triggered Ackel and Ackel Construction's liability for the unpaid aggregate amount of $845,915.28. Further, Ackel and Ackel Construction's failure to pay Mack Financial placed them in breach of Continuing Guaranty 001. Thus, we find that no genuine issue of material fact exists as to the breach of guaranty claim related to the Mack Financial Contracts.

Regarding the Volvo Financial Contract, plaintiffs also offer Continuing Guaranty 002 as well as Bullins' declaration. Rec. Docs 17-17; 17-4. In Continuing Guaranty 002, defendants jointly and severally guaranteed Fleestar's full and complete repayment to Volvo Financial. Rec. Doc. 17-17 at 1. Likewise, the guaranty

clearly sets forth defendants' acknowledgment, as Fleestar's guarantors, that plaintiffs have the right to proceed against them directly to satisfy any outstanding obligation. *Id.* The Volvo Financial Contracts also provided that any failure by the borrower or its guarantor to make a payment when due constituted "an event of default." Rec. Doc. 17-13 at 3. Bullins' testimony confirms plaintiffs' allegation that Volvo Financial never received any payment by Fleetstar, Ackel or Ackel Construction, and as a result, Fleetstar defaulted under the contract's terms. Rec. Doc. 17-4 at 7.

As it pertains to the Volvo Financial Contract, the undisputed facts establish that the parties executed a valid guaranty agreement. By defaulting on the payments owed to Volvo Financial, Fleetstar breached under the terms of the Volvo Financial Contract and triggered Ackel and Ackel Construction's liability for the unpaid aggregate amount of $349,013.84. Ackel and Ackel Construction's failure to pay Volvo Financial placed them in breach of Continuing Guaranty 002. Therefore, no genuine issue of material fact exists as to the breach of guaranty claim related to the Volvo Financial Contract.

Upon review of the plaintiffs' motion and the attached summary judgment evidence supporting plaintiffs' assertion that defendants are liable for the amounts claimed, summary judgment in favor of Mack Financial and Volvo Financial is proper. As such, plaintiffs

are entitled to the amounts owed for the default of Fleetstar as well as attorney's fees and costs. *See Wooten*, 2010 WL 11570202, at *4 (concluding that plaintiffs may be awarded attorney's fees and costs as permitted by Section 6-21.2 of the North Carolina General Statutes). Furthermore, because judgment shall be awarded to plaintiffs to satisfy the amounts owed by defendants, plaintiffs' pre-consolidation writ of sequestration against Fleetstar and all other pending motions shall be **DISMISSED AS MOOT**. *See Amar v. Whitley*, 100 F.3d 22, 23 (5th Cir. 1996)(finding denial of writ of sequestration to be a moot issue because prevailing litigant was able to collect costs through other means).

New Orleans, Louisiana this 9th day of June, 2021

SENIOR UNITED STATES DISTRICT JUDGE