```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

| | |
|---|---|
| **Mack Financial Services, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-2814** |
| **GEORGE J. ACKEL III, ET AL.** | **SECTION "B"(5)** |

## ORDER AND REASONS

Before this Court is Plaintiffs' motion for attorneys' fees and costs. For the reasons discussed below,

**IT IS ORDERED** that the motion is **GRANTED**.

### I.   FACTUAL AND PROCEDURAL HISTORY

This suit arises from a breach of guaranty claim wherein the defendants Fleetstar, LLC ("Fleetstar"), George J. Ackel III ("Ackel"), and Ackel Construction Company ("Ackel Construction")(collectively "defendants") allegedly failed to make payments owed to Plaintiffs Mack Financial Services, a division of VFS US LLC ("Mack Financial") and Volvo Financial Services, a division of VFS US LLC ("Volvo Financial")(collectively "plaintiffs"). Rec. Doc. 1.

On or about August 17, 2018, Fleetstar allegedly executed a Master Loan and Security Agreement ("Master Agreement") in favor of Mack Financial. Rec. Doc. 17-3 at 1. Fleetstar also executed a secured promissory note and schedule ("Schedule 001 Contract") through which Fleetstar borrowed the principal amount of $547,708 from Mack Financial to finance its purchase of four 2019 Mack

Pinnacle 64T Daycabs ("Schedule 001 Equipment"). *Id.* at 1-2. Fleetstar allegedly agreed to repay the amount borrowed plus interest in 60 monthly payments of $10,713.97. *Id.* at 2. Accordingly, to secure the payment due under the Schedule 001 Contract, Fleetstar allegedly granted Mack Financial a security interest in the Schedule 001 Equipment ("Schedule 001 Collateral"), which Mack Financial perfected on August 21, 2018. *Id.*

On or about February 28, 2018, A & Brothers Construction Company of Louisiana, LLC ("A & Brothers") executed a credit sales contract ("Schedule 003 Contract") through which A & Brothers borrowed the principal amount of $127,436.77 from Old River of New Orleans, LLC ("Old River") to finance its purchase of a 2018 Mack GU13 truck with 2018 OX Body ("Schedule 003 Equipment"). *Id.* at 3. A & Brothers allegedly agreed to repay the amount borrowed plus interest in 72 monthly installments of $2,524.01. *Id.* To secure payments due under the Schedule 003 Contract, A & Brothers allegedly granted Old River a security interest in the Schedule 003 Equipment ("Schedule 003 Collateral"). *Id.*

On or about February 28, 2018, A & Brothers assigned its rights and interests in Schedule 003 Contract and Collateral to Mack Financial. *Id.* On July 10, 2018, Mack Financial perfected its interest in the Schedule 003 Collateral. *Id.* On September 18, 2018, Mack Financial further perfected its interest in the Schedule 003

Collateral by filing a UCC-1 Financing Statement with the Louisiana Secretary of State. *Id.* at 3-4.

On or about April 10, 2018, A & Brothers executed a credit sales contract ("Schedule 004 Contract") through which A & Brothers borrowed the principal amount of $117,369.45 from Old River to finance its purchase of a 2018 Mack GU713 truck ("Schedule 004 Equipment"). *Id.* at 4. A & Brothers allegedly agreed to repay the amount borrowed plus interest in 72 monthly payments of $2,318.47. *Id.* Accordingly, to secure payments due under the Schedule 004 Contract, A & Brothers allegedly granted Old River a security interest in the Schedule 004 Equipment ("Schedule 004 Collateral"). *Id.*

On that same date, Old River assigned its rights and interests in the Schedule 004 Contract and Collateral to Mack Financial. *Id.* On April 19, 2018, Mack Financial perfected its interest in the Schedule 004 Collateral. Meanwhile, on or about June 29, 2018, A & Brothers merged with Fleetstar, with Fleetstar being the surviving entity. *Id.* at 4-5.

On or about September 5, 2018, Fleetstar executed a secured promissory note ("Schedule 005 Contract") through which Fleetstar borrowed the principal amount of $335,042.94 from Volvo Financial to finance its purchase of two 2019 Volvo VHD84F trucks with an attached 16 ft. steep dump bed ("Schedule 005 Equipment"). *Id.* at 5. Fleetstar allegedly agreed to repay the amount borrowed plus

interest in 60 monthly payments of $6,579.07. *Id.* Accordingly, Fleetstar allegedly granted Volvo Financial a security interest in the Schedule 005 Equipment ("Schedule 005 Collateral"), which was properly perfected on September 21, 2018 and September 24, 2018. *Id.* at 5-6. Volvo Financial further perfected its interest in the Schedule 005 Collateral by filing a UCC-1 Financing Statement with the Louisiana Secretary of State on September 11, 2018. *Id.*

On or about August 17, 2018, defendants Ackel and Ackel Construction executed a continuing guaranty, pursuant to which, for acknowledged consideration, guaranteed the full, prompt and complete payment and performance of all sums owed by Fleetstar to Mack Financial under Schedule 001, Schedule 003, and Schedule 004 Contracts ("Continuing Guaranty 001"). *Id.* at 6.

On or about September 5, 2018, Ackel and Ackel Construction likewise executed a continuing guaranty, pursuant to which, for acknowledged consideration, guaranteed the full, prompt, and complete payment and performance of all sums owed by Fleetstar to Volvo Financial under Schedule 005 Contract ("Continuing Guaranty 002"). *Id.*

All contracts provided that Fleetstar would be in default if it failed to pay any amount due to Mack Financial or Volvo Financial, and upon default, the latter may, at its option, declare all indebtedness due to it immediately due and, without notice,

demand, or legal process, take possession of the collateral. Rec. Doc. 1 at 9.

On April 2, 2019, Fleetstar filed a voluntary petition under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Louisiana. *Id.* at 8. Subsequently, on February 5, 2020, the bankruptcy court granted plaintiffs' motion to lift the stay, specifically as to the Schedule 001, Schedule 003, Schedule 004 and Schedule 005 Collateral. *Id.* The court's decision to grant the motion allowed plaintiffs to pursue the underlying collateral. *Id.*

To avoid judicial intervention, plaintiffs allegedly contacted Fleetstar to see if it would voluntarily surrender the collateral. Rec. Doc. 17-3 at 7. In response, Ackel Construction sent plaintiffs an invoice for storage of the collateral and informed plaintiffs that they would not turn over the collateral until the invoice was paid. *Id.* Although plaintiffs disputed liability on the invoice, they agreed to pay the purported "storage costs" to attempt to effectuate immediate return of the collateral. *Id.* at 8. Despite this agreement, plaintiffs allege that Ackel Construction and Fleetstar did not return the collateral and ceased further communication. *Id.*

On October 15, 2020, Plaintiffs filed a complaint against Ackel and Ackel Construction. Rec. Doc. 1. Plaintiffs alleged that Fleetstar defaulted under the terms of the Schedule 001, Schedule

003, and Schedule 004 Contracts ("Mack Financial Contracts") for failure to pay any amount due thereunder. *Id.* According to Plaintiffs, as of March 30, 2021, the total balance due under the Mack Financial Contracts was $845,915.28 plus interest and late fees, reasonable attorney's fees, and all costs of the proceedings. Rec. Doc. 17-3 at 12-13.  Plaintiffs further alleged that Fleetstar defaulted under the terms of the Schedule 005 Contract ("Volvo Financial Contract") for failure to remit payments due thereunder. Rec. Doc. 1 at 9. According to Plaintiffs, as of March 30, 2021, the balance due on the Volvo Financial Contract was $349,013.84, plus interest and late fees, reasonable attorney's fees, and all costs of the proceedings. Rec. Doc. 17-3 at 13.

On October 16, 2020, Plaintiffs filed a motion for writ of sequestration against Ackel and Ackel Construction, requesting that the collateral be sequestered. Rec. Doc. 3. On November 12, 2020, this Court dismissed the motion without prejudice because the plaintiffs failed to indicate whether the property was within the defendants' possession. *See* Rec. Doc. 8.

On April 1, 2021, Plaintiffs filed a separate lawsuit against Fleetstar based on the same contracts and collateral, seeking recognition and enforcement of their purported security rights. *Mack Financial Services, et al v. Fleetstar, LLC*, (CA 21-669), ECF No. 1. Plaintiffs prayed that the Court's recognition and enforcement of their security interests would permit them to seize

the collateral which would be sold at private sale in satisfaction of the amounts owed by leetstar. *Id.* at 11. On May 7, 2021, this Court consolidated the two related actions. Rec. Doc. 18.

On April 4, 2021, Plaintiffs filed a motion for summary judgment against Ackel and Ackel Construction (Rec. Doc. 20), alleging that there is no genuine issue of material fact that Fleetstar, Ackel, and Ackel Construction defaulted on the underlying contracts; and thus, Plaintiffs are entitled to recognition and enforcement of their security interests in and to the relevant collateral. Rec. Doc. 20 at 1. Defendants failed to file any response to Plaintiffs motion for summary judgment.

On June 10, 2021, this Court entered a written Order and Reasons granting Plaintiffs' motion for summary judgment. Rec. Doc. 23. This Court also held that "Plaintiffs' are entitled to the amounts owed for the default of Fleetstar as well as attorney's fees and costs." Rec. Doc. No. 23 at 12-13. On June 23, 2021, Plaintiffs filed the instant motion seeking an award of their attorneys' fees totaling $89,479.00 and costs totaling $1,664.11. Rec. Doc. 25-1. Defendants did not file an opposition to Plaintiffs motion for attorneys' fees and costs.

## II. LAW & ANALYSIS

### A. Recoverability of Attorneys' Fees

The rule in the federal court system has long been that attorney's fees are not ordinarily recoverable in the absence of

a statute or enforceable contract providing therefor. *See Fisk Elec. Co. v. DQSI, L.L.C.*, 740 F. App'x 399, 401 (5th Cir. 2018). *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 87 S. Ct. 1404, 18 L. Ed. 2d 475 (1967). Nonetheless, in federal diversity cases, courts should not apply federal substantive law regarding the recovery of attorney's fees; but instead, the law of the forum state. *Tech. Eng'g Consultants, LLC v. Beall*, No. CIV.A. 11-1579, 2012 WL 4141425 (E.D. La. Sept. 14, 2012) (stating Louisiana law governed the issue of attorney's fees because the case was before this Court under diversity jurisdiction); *Chevron USA, Inc. v. Aker Maritime Inc.*, 689 F.3d 497, 505 (5th Cir. 2012) (quoting *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002)). Although federal courts sitting in diversity must apply the substantive law of the forum state, federal procedural rules must still be followed. *United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 766 (5th Cir. 1996).

    **i. Whether Plaintiffs are Entitled to Recover Under Louisiana Substantive Law**

Under Louisiana law, attorneys' fee awards are allowed when authorized by statute or contract. *Perniciaro v. Hamed*, 20-62 (La. App. 5 Cir. 12/16/20), 309 So. 3d 813; *Peyton Place, Condo. Assocs. Inc. v. Guastella*, 08-365 (La. App. 5 Cir. 5/29/09), 18 So.3d 132, 146; *Langley v. Petro Star Corp. of La.*, 792 So.2d 721, 723

(La.2001); *see also*, Saúl Litvinoff, 6 Louisiana Civil Law Treatise: The Law of Obligations, § 12.15 at 354 (West Group 1999).

    **a. The Language of the Contracts**

To determine whether Plaintiffs are entitled to recover attorneys' fees under the Master Loan and Security Agreement and Guaranty contract, this Court must first apply the state substantive law on contract interpretation. "Contracts have the effect of law for the parties" and the "[i]nterpretation of a contract is the determination of the common intent of the parties." *Marin v. Exxon Mobil Corp.*, 09-2368 (La.10/19/10), 48 So.3d 234, 258; La. Civ. Code arts. 1983 and 2045. The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. *Prejean v. Guillory*, 10-0740 (La.7/2/10), 38 So.3d 274, 279. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. Common intent is determined, therefore, in accordance with the general, ordinary, plain, and popular meaning of the words used in the contract. *Prejean*, 38 So.3d at 279. "Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a

contract into harmony with a supposed reasonable intention of the parties." *Id.*

However, even when the language of the contract is clear, courts should refrain from construing the contract in such a manner as to lead to absurd consequences. *Amend v. McCabe*, 95-0316 (La.12/1/95), 664 So.2d 1183, 1187; La. Civ. Code art. 2046. Most importantly, a contract "must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance." *Prejean*, 38 So.3d at 279. Moreover, a contract provision that is susceptible to different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. Amend, 664 So.2d at 1187; La. C.C. art. 2049. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050; Amend, 664 So.2d at 1187.

Plaintiffs contend that the plain language of both the Master Loan and Security Agreement and the Guaranty Agreement entitles them to an award for attorney's fees and costs. Rec. Doc. 25-1 at 3. The explicit language of the Master Loan and Security agreement clearly shows that Defendant Fleetstar agreed to pay plaintiffs all costs and expenses, including attorney's fees. This agreement states, in pertinent part,

> Whenever an event of Default has occurred under this Agreement and any time thereafter, Lender will have all the rights and remedies provided by this agreement, the UCC, and other applicable law. At the option of Lender, with or with without notice, any or all of the obligations then owing under this Agreement will be immediately due and payable in full, together with **all costs and expenses, including attorneys' fees**, incurred by Lender in the enforcement of its rights and remedies.

Rec. Doc. 25-1 at 3; *see also* Rec. Doc. 1-4, p. 3 of 26. This contractual provision is clear and unambiguous; thus, Defendant Fleetstar is under a contractual obligation to pay Plaintiffs all expenses incurred, including attorney's fees, from the date of default. Fleetstar further agreed in the contract that a failure to make payment under any loan document or commencement of any case under the Bankruptcy code or before a federal court would constitute an act of default. Given that this Court previously ruled that Defendant Fleetstar defaulted on their contract, Plaintiffs are owed attorney's fees and costs under the provision, *supra*.

Likewise, Defendants George Ackel III and Ackel Construction are also contractually obligated to pay Plaintiffs' attorneys' fees and costs. Both Defendants signed a guaranty agreement wherein both entities agreed to pay all amounts, including all liabilities and obligations, that may be owed to Plaintiffs by Defendant Fleetstar. Rec. Doc. 25-1 at 3. The guaranty agreement states, in pertinent part,

> Pursuant to this Guaranty ("Guaranty")…each of the undersigned ("Guarantor"), jointly and severally, under seal, absolutely, unconditionally and irrevocably guarantees to Mack Financial Services, a division of VFS US LLC, and its affiliates and subsidiaries (each individually, together with its successors and assigns, a "Creditor") **the full, prompt, and complete payment and performance of all obligations of all sums, moneys, notes, loans, indebtedness, leases, or lease payments that shall at any time be due and payable to Creditor, from FLEETSTAR, LLC ("Debtor")**, whether now or owing or hereafter contracted, absolute or contingent, including all liabilities or obligations that Debtor has incurred or may incur or from other dealings by which the Creditor may become in any manner a creditor of Debtor (collectively the "Obligations").

Rec. Doc. 25-1 at 3; *see also* Rec. Doc. 1-6, at p. 12 of 16. Like the Loan agreement perfected between Plaintiffs and Defendant Fleetstar discussed supra, this contractual provision is also clear and unambiguous. Under this agreement, Defendants clearly agreed to pay all expenses and costs due to Plaintiffs from Fleetstar. Thus, when Fleetstar defaulted, Defendants Ackel and Ackel Construction were obligated under this guaranty contract to pay the expenses and costs of the Plaintiffs, including reasonable attorney's fees. *See* Rec. Doc. 1-6, at p. 12 (Defendant agreeing that "in the event of any dispute regarding this Guaranty, [Defendant] agrees to pay all costs and expenses of [Plaintiff] (including reasonable attorneys' fees and expenses) incurred in connection with such dispute, regardless of whether litigation or other action is instigated.") Accordingly, Plaintiffs are entitled

to an award for attorneys' fees and costs under the express language of the contracts.

### b. Whether Plaintiffs' Fees are Reasonable

Even when attorney's fees are authorized by statute or contract, all fees are subject to review and control by the courts, and counsel cannot collect a fee that is clearly excessive. *See Nat'l Info Servs., Inc. v. Gottsegen*, 98-528 (La. App. 5 Cir. 6/1/99); 737 So. 2d 909. Rather, an award of attorney fees must be reasonable based upon the court's consideration of certain relevant factors. *Riddle v. Premier Plaza of Monroe, LLC*, 51,173 (La. App. 2 Cir. 2/15/17), 216 So.3d 170, 175; *Linoski v. Fleetwood Homes of Tx.*, 12, 38,338 (La. App. 2 Cir. 5/12/04), 873 So.2d 886, 888. "Where attorney's fees are provided by contract, a trial court does not possess the same degree of equitable discretion to deny such fees that it has when applying a statute allowing for a discretionary award." *Cable Marine, Inc. v. M/V Trust Me II*, 632 F.2d 1344, 1345 (5th Cir. 1980). "Nevertheless, a court in its sound discretion may decline to award attorney's fees authorized by a contractual provision when it believes that such an award would be inequitable and unreasonable." *Id.*

In determining the reasonableness of attorney fees, the factors to be considered include the extent and character of the work performed, the result obtained and the amount of money involved, the number of court appearances required, the difficulty

of the legal issues, the fee customarily charged in the locality for similar services, the experience and skill of counsel and the court's own knowledge. *Riddle v. Premier Plaza of Monroe, LLC*, 51,173 (La. App. 2 Cir. 2/15/17), 216 So.3d 170, 175.

Plaintiffs contend that their request for attorneys' fees totaling $89,479.00 is reasonable under Louisiana law. In support of their argument, Plaintiffs submitted an affidavit of Mr. Rouchell, Plaintiffs' counsel of record. Mr. Rouchell attested to the reasonableness of the plaintiffs' fee calculation, stating that the hourly rates charged, and the total amount of 350 hours spent were necessary to litigate this matter over the course of two years.

The record shows Plaintiffs' attorneys of record, Mr. Cheatham and Mr. Rouchell charged an hourly rate of $265.00 per hour, while Mr. Callihan and Mr. Parrott charged an hourly rate of $250.00 per hour. This Court has recently recognized that such hourly rates are reasonable if the counselor's expertise and experience so justify. *See, e.g.*, *Funez v. EBM*, 2018 WL 5004806, at *4 (E.D. La. Oct. 16, 2018) (finding a partner rate of $350 per hour reasonable); *Dadar v. T&C Marine, L.L.C.*, 2018 WL 3950396, at *6 (E.D. La. May 3, 2018) (finding $350 hourly rate reasonable in this market).

Here, Mr. Rouchell has been practicing law for eighteen (18) years and is an equity partner in the law firm of Adams and Reese,

LLP. Mr. Rouchell has also specialized in commercial litigation matters and is listed in "Best Lawyers of America." Mr. Cheatham is an equity partner at the law firm of Adams and Reese, LLP, and has been practicing law since 2005. Mr. Cheatham also specializes in commercial litigation matters and bankruptcy. Likewise, both Mr. Parrott and Mr. Callihan are income partners at Adams and Reese, LLP, and they both have been practicing law since 2011. Both Mr. Callahan and Mr. Parrott focus their practice on commercial litigation matters.

These rates are appropriate given the specialized experience of counsel in this field, which enables them to provide efficient legal services to their client. Moreover, the hourly rates charged to Plaintiffs are considerably below rates awarded for comparably experienced counsel in this market. *See M C Bank & Trust Co. v. Suard Barge Serv., Inc*., No. 16-14311, 2017 WL 6344021, at *2 (E.D. La. Dec. 12, 2017) (finding that $350 was a reasonable hourly rate for an attorney with over 17 years of experience); *Funez v. EBM*, 2018 WL 5004806, at *4 (E.D. La. Oct. 16, 2018) (finding a partner rate of $350 per hour reasonable); *Soonhee Kim v. Ferdinand*, 2018 WL 1635795, at *4 (E.D. La. Apr. 5, 2018) (finding $410 per hour "typical for partners in this community"). Accordingly, Plaintiffs' requested attorneys' fees are reasonable.

    **ii. Whether Plaintiffs are Entitled to Recover Under Federal Procedural Rules**

Federal Rule of Civil Procedure 9(g) requires an item of special damage to be specifically pled by the requesting party. Fed. R. Civ. Proc. 9(g) ("If an item of special damage is claimed, it must be specifically stated.")  More importantly, the Fifth Circuit has intimated that attorney's fees are such items of special damage that must be specifically pleaded. *United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762 (5th Cir. 1996);  *See also Crosby v. Old Republic Ins. Co.*, 978 F.2d 210, 211 n. 1 (5th Cir.1992) (noting that any pleading defect caused by a party's failure to plead for attorney's fees under Rule 9 was cured by advancing the claim during the pretrial conference).

Rule 54(d)(2) mandates that a motion for attorneys' fees be filed within fourteen (14) days after entry of judgment. *See* Fed. R. Civ. P. 54(d)(2)(B). The motion must specify the grounds entitling the moving party to the award, state the amount sought, or provide a fair estimate of the amount sought, and must disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made. *Id.*  Thus, the Federal Rules establish a three-prong requirement for successfully requesting attorney's fees. *United Industries, Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 766 (5th Cir. 1996).  *First*, the requesting party must plead a request for attorney's fees. Fed. R. Civ. Proc. 9(g).  *Second*, the party requesting attorneys' fees must file a timely motion within fourteen (14) days after entry of

judgement. Fed. R. Civ. Proc. 54(d)(2). *Third*, the motion must specify the grounds for the award. Fed. R. Civ. Proc. 54(d)(2)(B); see also *United Industries, Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 766 (5th Cir. 1996) (denying Plaintiff's motion for attorneys' fees because it failed to adhere to the requirements mandated under Rules 9(g) and 54(d)(2)). Unless modified by statute or court order, failure to meet both requirements waive a party's request for attorney's fees. *United Industries, Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 766 (5th Cir. 1996). Further, the Fifth Circuit has ruled that motions for attorney's fees provided by contract are permissible under Rule 54(d)(2*). Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035, 1040 (5th Cir. 2014) (reversing the district court's order denying the defendant's motion for attorney's fees and holding that motions for attorney's fees provided by contract are permissible under Rule 54(d)(2)).

Plaintiffs have satisfied all procedural requirements mandated by the federal rules. *First*, Plaintiffs successfully pled for attorneys' fees and costs in their initial complaint. Rec. Doc. 1 at 11. *Second*, Plaintiffs filed the instant motion on June 23, 3021, which was within the fourteen (14) day window from the entry of judgment. *See* Rec. Doc. 23 (showing the judgment was entered on June 10, 2021.) *Third*, the motion also properly specified the grounds for an award of Plaintiffs' attorneys' fees and costs. Rec. Doc. 25-1. Plaintiffs motion was not only

supplemented with the contractual language providing for recovery of their attorneys' fees and costs, but Plaintiffs also attached invoices specifying the amounts sought. *See* Rec. Doc. 25-3; Rec. Doc. 25-4; Rec. Doc. 25-5; Rec. Doc. 25-6. Additionally, Plaintiffs attached a record of their attorneys' timesheets which contain the total amount of hours billed to this matter and a description of what actions were performed. See Rec. Doc. 25-3. Accordingly, Plaintiffs have satisfied all procedural requirements mandated by the federal rules.

    New Orleans, Louisiana this 24th day of September 2021

_____
SENIOR UNITED STATES DISTRICT JUDGE